ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| GERSON SANTIAGO TORRES<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202400656 | Revisión Administrativa procedente del Departamento de Corrección y Rehabilitación, Comité de Clasificación y Tratamiento<br><br>Caso Número:<br>P676-19454<br><br>Sobre:<br>Custodia |
|---|---|---|

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 20 de diciembre de 2024.

El Sr. Gerson Santiago Torres (Santiago Torres o recurrente) nos solicita que dejemos sin efecto la "Resolución" que emitió y notificó el Comité de Clasificación y Tratamiento del Departamento de Corrección y Rehabilitación el 28 de agosto de 2024. En el referido dictamen, el Comité ratificó al recurrente en el nivel de custodia *mediana*.

Por los fundamentos que expondremos a continuación, se *confirma la Resolución* administrativa recurrida.

### I.

El recurrente es miembro de la población correccional del complejo Ponce 1,000 en mediana seguridad. Está cumpliendo unas sentencias por ciento cuatro (104) años que le impuso el Tribunal de Aibonito el 26 de junio de 2009 por los delitos de Asesinato, Artículo 106A del Código Penal de 2004, 33 LPRA sec. 4734 (99 años); Infracción al Artículo 5.15 de la Ley de Armas de Puerto Rico, Ley 404-2000, 25 LPRA sec. 458n (5 años) y violación

Número Identificador

SEN2024_____

al Artículo 75 de la Ley 177-2003, 8 LPRA sec. 450c, sobre maltrato de menores (5 años).

El 28 de agosto de 2024, el Comité de Clasificación y Tratamiento se reunió con el propósito de evaluar el plan institucional de Santiago Torres y determinó mantenerlo en custodia *mediana*. En las determinaciones de hechos realizó un recuento de eventos en el que destacó lo siguiente:

El 13 de julio de 2009 fue clasificado inicialmente en custodia máxima por la severidad del delito y la sentencia.

El 29 de junio de 2017, se benefició del programa de tratamiento psico-educativo Aprendiendo Vivir sin Violencia.

El 30 de agosto de 2017 fue reclasificado a una custodia mediana por apelación concedida.

El 23 de agosto de 2022, se ratifica la custodia mediana, se utiliza una modificación discrecional gravedad del delito.

El confinado está asignado a realizar labores de mantenimiento interior, y sus evaluaciones son buenas.

Se recibe el 15 de febrero de 2023 un informe de incidente en el área de trabajo de mantenimiento interior.

El 26 de abril de 2023, se da de baja de realizar labores de mantenimiento interno en la Institución y en su lugar se asigna a realizar labores de manteamiento en el área de cocina.

El confinado posee cuarto año y continúa integrado al curso de Arte y Diseño con buenas evaluaciones.

El 22 de agosto de 2023, se ratifica la custodia mediana por la gravedad del delito.

El 22 de mayo de 2024, se benefició del Taller Fotografía Básica

El confinado durante su reclusión no consta actos de indisciplina.

El confinado cumple el mínimo de sentencia el 20 de junio de 2034 y el máximo de sentencia el 15 de enero de 2109.

En las conclusiones de derecho el Comité expresó, en parte, lo siguiente:

El confinado, cumple por los delitos de Asesinato, ley de Armas y Art 75 ley 177 maltrato de menores. La versión del delito destaca que el confinado mediante un arma de fuego le disparó en tres ocasiones a su pareja causándole su muerte, frente a un menor de edad. Al aplicar la planilla de reclasificación en casos sentenciados la misma arroja una puntuación de 2 lo correspondiente a una custodia mínima por lo que el CCT está utilizando una modificación discrecional para un nivel de custodia más alto [por] gravedad del delito. Posee una sentencia de 104 años y ha cumplido 24 años 7 meses y 11 días. Le restan 10 años (2034) para ser evaluado por la Junta Libertad Bajo Palabra quien será el organismo que más temprano le otorgaría la libertad, ante el privilegio de conceder el mismo. Su fecha prevista de excarcelación esta para el (2109) en 85 años, restándole para extinguir su sentencia. El CCT toma en conocimiento que el confinado se encuentra realizando ajustes en custodia mediana desde agosto de 2017, aproximadamente 7 años, **lo que se considera poco tiempo en su custodia actual**. Se ha beneficiado de Programa vivir sin violencia en el (2017), **al momento no cuenta con reevaluación de SPEA[1], para tener una evaluación actualizada y obtener mínimas garantías**. Se encuentra realizando labores en el área de cocina desde el 26 de abril de 2023, con evaluaciones satisfactorias y continúa integrado al curso de Arte y Diseño. Con buenas evaluaciones. Es necesario que permanezca un tiempo adicional en una custodia mediana para continuar observado su proceso rehabilitación, hacia transformación de conducta v actitudes de un ser humano dirigidos a su integración a la sociedad. El DCR tiene la responsabilidad de propiciar la rehabilitación del confinado sin menoscabar la seguridad de la sociedad. Le exhortamos a continuar manteniendo esto ajustes positivos dirigidos hacia su rehabilitación.

En desacuerdo, el 5 de septiembre de 2024, Santiago Torres solicitó Reconsideración. Adujo que el Comité de Clasificación tomó en cuenta la "gravedad del delito" para asignarle en custodia mediana. Señaló que ese acto es contraproducente pues siempre aparecerá en la escala extrema. Adujo que lleva siete (7) años en custodia mediana. Que durante el tiempo de reclusión ha tenido un ajuste institucional favorable y satisfactorio con las terapias. Resaltó que culminó el curso de arte y diseño gráfico, el de

---

[1] Sección de Programa de Evaluación y Asesoramiento (SPEA).

certificación de fotografía y ha realizado trabajo en el área de cocina con buenos ajustes. Disputó que el Comité tomó en consideración una "modificación discrecional" y la "gravedad del delito" para reclasificarle en custodia mediana pasando por alto lo que establece el Reglamento 9151, en su apéndice K (Formulario de Clasificación de Custodia Escala de Reclasificación de Custodia). Enfatizó que en la escala de nivel de custodia arroja una puntuación de "2", que lo ubica en la escala "mínima". Agregó que las modificaciones discrecionales para un nivel de custodia más alta, según el apéndice K, sección III (D) debe estar basada en documentación escrita proveniente de reportes disciplinarios y cualquier otra información que evidencie los ajustes o el comportamiento del confinado. Manifestó que a lo largo de sus quince (15) años de confinamiento ha demostrado ajustes institucionales que le permiten clasificarlo adecuadamente.

El 23 de septiembre de 2024, notificada el 8 de noviembre de 2024, la Oficina de Clasificación de Confinados determinó no acoger la solicitud de reconsideración. Explicó lo siguiente:

> El Comité de Clasificación y Tratamiento determinó utilizar la modificación discrecional "Gravedad del Delito" en consideración a las circunstancias de los delitos cometidos. Según se desprende de la información sometida el confinado indicó que sostuvo una discusión con su pareja, ya que, a través del hijo menor de esta se enteró que su esposa le era infiel desde hacía tres meses, antes del incidente. El menor le dijo que un hombre le daba besitos en la boca a su mamá. Él se enfureció ante este hecho y tomó un arma de fuego que utilizaba para su trabajo y le disparó en tres ocasiones ocasionándole la muerte.
> Es sentenciado a cumplir 104 años de sentencia de los cuales ha cumplido 16 años, 7 meses y 11 días, de ellos lleva cumpliendo en custodia mediana 7 años aproximadamente.
>
> Por otro lado, el Comité de Clasificación y Tratamiento consideró otros aspectos establecidos en el Manual para la Clasificación de Confinados como lo son la fecha prevista para referir el caso ante la Junta de Libertad Bajo Palabra (20 de junio de 2034, dentro de

10 años) y la fecha prevista de excarcelación (15 de enero de 2109, dentro de 85 años).

Asimismo, explicó que se tomó conocimiento de que el recurrente cuenta con cuarto año de escuela superior y que completó el curso vocacional de fotografía.  Además, que se encuentra integrado en el Taller Vocacional de Arte y Diseño y que completó las terapias de Aprendiendo a Vivir sin Violencia el 29 de junio de 2017.

Inconforme con la decisión, el 20 de noviembre de 2024, Santiago Torres presentó un recurso de revisión, en la cual planteó los siguientes señalamientos de error:

> **Primero:**  El Comité evaluó lo largo de la sentencia para establecer que estuviera más tiempo en custodia.
>
> **Segundo:**  Tomar el tiempo que le resta para ser considerado por la Junta de Libertad Bajo Palabra para denegar la solicitud.
>
> **Tercero:**  El Comité Evaluador pasó por alto otros aspectos fundamentales y solo se basan en la sentencia y lo extenso de la misma sin ver el ajuste favorable y viable para ser partícipe de una mínima custodia.

Luego de evaluar la solicitud del Recurrente y la determinación administrativa de la cual recurre, nos expresamos.

## II.

### A.

La Constitución de Puerto Rico, en la Sección 19 del Artículo VI, establece como política pública que el Estado habrá de: "...reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Artículo VI, Sec. 19, Const. ELA, LPRA, Tomo 1. Cruz v. Administración, 164 DPR 341, 351 (2005).

Mediante el Plan de Reorganización Núm. 2-2011 se invistió al Departamento de Corrección y Rehabilitación con la facultad de efectuar la clasificación adecuada y revisión continua de la clientela, conforme a los ajustes y cambios de ésta. Véase el Artículo Núm. 5, Plan de Reorganización, 3 LPRA Ap. XVIII. El Plan de Reorganización facultó al Departamento de Corrección con el poder de reglamentación para estructurar la política pública correccional y establecer las normas para el régimen institucional. Art. 5(c), Plan de Reorganización, 3 LPRA Ap. XVIII, Véase, Lebrón Laureano v. Depto. Corrección, 209 DPR 489, 499 (2022).

De acuerdo con sus facultades, el Secretario del Departamento de Corrección y Rehabilitación, adoptó el Manual de Clasificación de Confinados, Reglamento Núm. 9151, de 22 de enero de 2020, que comenzó a regir en febrero de 2020 (Reglamento 9151). El Tribunal Supremo ha expresado que estos reglamentos delimitan la discreción de la agencia en los asuntos relacionados con la clasificación de custodia de los confinados. Lebrón Laureano v. Depto. Corrección, *supra*; López Borges v. Adm. Corrección, 185 DPR 603, 620 (2012); Cruz v. Administración, *supra*, pág. 352.

El Reglamento 9151 define la reclasificación de custodia como la "Revisión periódica de los confinados en lo que respecta a su progreso como parte del Plan Institucional, así como también a su nivel de custodia." Sección 1, Reglamento 9151.

En relación con la clasificación de custodia, el Reglamento 9151, dispone que existen cuatro niveles reconocidos que se basan en el grado de la supervisión que se requiere. En lo aquí pertinente, la Sección 1 del Reglamento define el nivel

de "custodia mediana" como los confinados de la población general que requieren un grado intermedio de supervisión. Estos confinados son asignados a celdas o dormitorios y son elegibles para ser asignados a cualquier labor o actividad que requiera supervisión de rutina dentro del perímetro de seguridad de la institución. De otro lado, la clasificación de "custodia mínima" se refiere a los confinados de la población general que son elegibles para habitar en vivienda de menor seguridad y que pueden trabajar fuera del perímetro con un mínimo de supervisión.

Las determinaciones del Comité sobre la reclasificación de custodia de un confinado sentenciado, debe fundamentarse "en el análisis de la totalidad de los expedientes del confinado desde su ingreso hasta el momento de su evaluación […]". Sección 7 (IV) (B) del Reglamento 9151.

Para llevar a cabo este proceso de reclasificación, la Sección 7 (II) del Reglamento 9151 establece el siguiente método:

> El formulario de Reclasificación de Custodia (Escala de Reclasificación de Custodia, Apéndice K) se utiliza para actualizar y revisar la evaluación inicial de custodia del confinado. **La reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación de custodia o la vivienda asignada. Su función primordial es verificar la adaptación del confinado y prestarle atención a cualquier situación que pueda surgir.**
>
> La revaluación de custodia se parece a la evaluación inicial de custodia, pero recalca aún más en la conducta institucional como reflejo del comportamiento real del confinado durante su reclusión. Es importante que los confinados que cumplan sentencias prolongadas tengan la oportunidad de obtener una reducción en niveles de custodia mediante el cumplimiento con los requisitos de la institución. (Énfasis nuestro).

El aludido Apéndice K, del Reglamento 9151, provee para el nivel de custodia indicado por la escala, según el formulario de

*Reclasificación de Custodia*. Estos niveles de custodia se detallan en la Parte III(A) de la Escala, la cual establece:

> 5 puntos o menos en renglones 1-8… Mínima
>
> 5 puntos o menos en renglones 1-8 con órdenes de arresto/detención…………………………………Mediana
>
> 6 a 10 puntos en renglones 1-8……… Mediana
>
> 7 puntos o más en renglones 1-3…… Máxima
>
> 11 puntos o más en renglones 1-8… Máxima

El Tribunal Supremo ha reiterado que esa puntuación, por sí sola, no conlleva un cambio automático en la clasificación del nivel de custodia. Ello, debido a que la Escala de Reclasificación le provee al Técnico Sociopenal algunos criterios adicionales "discrecionales" y "no discrecionales" para determinar el grado de custodia que finalmente recomendará para un confinado. Lebrón Laureano v. Depto. Corrección, *supra,* pág. 501; véase, además, Apéndice K del Reglamento 9151. Estos criterios son evaluados en la parte III de la Escala de Reclasificación. El Apéndice K, Sección III, provee para las modificaciones no discrecionales y **modificaciones discrecionales** que permiten un nivel de custodia más alto y bajo. Véase, Cruz v. Administración, *supra*, pág. 353.

Respecto a las modificaciones discrecionales, la Sección III (D) de las *Instrucciones para el Formulario de Reclasificación de Custodia* del Reglamento 9151, dispone lo siguiente:

> MODIFICACIONES DISCRECIONALES PARA UN NIVEL DE CUSTODIA MAS ALTO
>
> Toda modificación discrecional debe estar basada en documentación escrita, proveniente de reportes disciplinarios, informes de querellas, informes de libros de novedades, documentos del expediente criminal o social y cualquier otra información o documento que evidencia ajustes o comportamiento del confinado contrario a las normas y seguridad institucional.

En el renglón de los criterios discrecionales para asignar un nivel de custodia más alto se encuentran: **la gravedad del delito**; el historial de violencia excesiva; la afiliación prominente con gangas; que el confinado es de difícil manejo; grados de reincidencia; el riesgo de fuga; el comportamiento sexual agresivo; trastornos mentales o desajustes emocionales; representar amenaza o peligro; la desobediencia ante las normas, y el reingreso por violación de normas. Instrucciones para Formulario de Reclasificación de Custodia, Escala de Reclasificación, Apéndice K, Sección III, D del Reglamento 9151.

En cuanto a la "**gravedad del delito**", el inciso D de las Instrucciones explica lo siguiente:

> El personal tiene que documentar las características del delito que están consignadas en la exposición de hechos que se utilizan como fundamento para la decisión de modificación.
>
> Los confinados cuyas circunstancias del delito y sus consecuencias hayan creado una situación de tensión en la comunidad, revistiéndose el caso de notoriedad pública y la comunidad se siente amenazada con su presencia.

Por otro lado, para los confinados con sentencias de 99 años o más, el Reglamento señala que "[n]o se podrá recurrir al uso de la Modificación Discrecional sobre la "Gravedad del delito" ni al uso de los fundamentos "extensión o largo de la sentencia" **para mantenerlos en custodia máxima**". Instrucciones para Formulario de Reclasificación de Custodia, Sección III, inciso C.

De lo anterior se destaca que la determinación del nivel de custodia proviene de un conjunto de criterios y no solo de la puntuación obtenida en la parte II de la Escala de Reclasificación. Lebrón Laureano v. Depto. Corrección, *supra*.  De modo que, la

reclasificación responde al resultado de la parte II y parte III de la Escala de Reclasificación, las que incluye las consideraciones especiales de manejo, las modificaciones no discrecionales y las modificaciones discrecionales para un nivel de custodia más alto o bajo. Íd.

El Tribunal Supremo ha reiterado que la reducción de custodia "está condicionada al cumplimiento del reo con los requisitos de su plan institucional, que va evolucionando durante el encarcelamiento de acuerdo con el aprovechamiento del proceso de rehabilitación por parte del confinado." López Borges v. Adm. Corrección, *supra,* pág. 609.　En este análisis, el Comité, por lo general, está compuesto de "peritos en el campo tales como técnicos sociopenales y oficiales o consejeros correccionales". Lebrón Laureano v. Depto. Corrección, *supra,* pág. 504; Cruz v. Administración, *supra*, págs. 354-355.　Así, "[e]stos profesionales cuentan con la capacidad, la preparación, el conocimiento y la experiencia necesarios para atender las necesidades de los confinados y realizar este tipo de evaluaciones". Lebrón Laureano v. Depto. Corrección, *supra,* pág. 504; Cruz v. Administración, *supra*, pág. 355.

### B.

Por último, sabido es que el Departamento de Corrección merece particular deferencia en lo concerniente al proceso de clasificación de confinados. Lebrón Laureano v. Depto. Corrección, *supra;* Cruz v. Administración, *supra*.　Cónsono a lo anterior, las determinaciones administrativas gozan de una presunción de legalidad y corrección, ya que cuenta con la experiencia y pericia para realizar este tipo de evaluaciones. Lebrón Laureano v. Depto. Corrección, *supra;* Super Asphalt v. AFI y otro, 206 DPR 803, 819 (2021); Capó Cruz v. Jta. Planificación et al, 204 DPR 581,

591 (2020). Como consecuencia, las determinaciones administrativas deben sostenerse por los tribunales siempre que no sean arbitrarias o caprichosas. Lebrón Laureano v. Depto. Corrección, *supra,* pág. 503*;* Román Ortiz v. OGPe, 203 DPR 947, 956 (2020). Por eso, si una decisión de clasificación de custodia es razonable y cumple con el procedimiento de las reglas y manuales sin alterar los términos de la sentencia impuesta, el Tribunal debe confirmarla. Lebrón Laureano v. Depto. Corrección, *supra,* pág. 504*;* Cruz v. Administración, *supra*, pág. 355.

### III.

Santiago Torres alegó que el Comité de Clasificación y Tratamiento ratificó su custodia mediana, sin darle peso sustancial al ajuste institucional, el cual ha cumplido de forma efectiva y sin percance alguno. Señaló que le resulta adverso que se utilice únicamente el criterio de modificación discrecional por la "gravedad del delito" para mantenerlo en la custodia "mediana". Mencionó que la evaluación que realizó el Comité el 28 de agosto de 2024, arrojó una puntuación de 2, lo cual lo ubicaría en la custodia "mínima", según la Sección III, inciso (A) del Reglamento 9151. Señaló que ha cumplido con el ajuste institucional de una manera intachable durante los quince (15) años de confinamiento. Disputó que el Comité actuó de forma arbitraria e irrazonable sin una base racional sustancial. Evaluamos.

El Comité de Clasificación realizó la evaluación de custodia del Sr. Santiago Torres mediante el procedimiento de puntuaciones que provee el apéndice K del Reglamento 9151. Este análisis arrojó una puntuación de "2", que ubicaría al recurrente en una custodia "mínima". No obstante, el Comité reconoció que, aunque la planilla de reclasificación estableció una puntuación correspondiente a una custodia mínima, era necesario

aplicar el criterio de la "modificación discrecional", que provee el Reglamento 9151, Apéndice K, Sección III, D.

En este acápite, el Comité utilizó como modificación discrecional la "gravedad del delito". Explicó el Comité que el Sr. Santiago Torres cumple por los delitos de asesinato, ley de armas y maltrato de menores. Indicó que la versión del delito fue que el confinado mediante un arma de fuego le disparó en tres ocasiones a su pareja causándole la muerte, frente a un menor de edad. Mencionó que la sentencia es de ciento cuatro (104) años, ha cumplido veinticuatro (24) años, once (11) meses y once (11) días, más le restan diez (10) años para ser evaluado por la Junta de Libertad Bajo Palabra. Que lleva aproximadamente siete (7) años en custodia mediana lo que se considera poco tiempo en su custodia actual. Aseveró que el recurrente al momento no contaba con la reevaluación de SPEA para tener una evaluación actualizada y obtener garantías mínimas. Expresó que era necesario que permaneciera un tiempo adicional en custodia mediana para continuar observando su proceso de rehabilitación, hacia transformación de conducta y actitudes de un ser humano dirigidos a su integración a la sociedad. El Comité también reconoció que el Sr. Santiago Torres realizaba labores en el área de cocina con evaluaciones satisfactorias.

El Reglamento 9151 le permite al Comité utilizar las modificaciones discrecionales para establecer un nivel de custodia más alto al que arroje la puntuación. Las modificaciones discrecionales incluyen, entre otras, la "gravedad del delito". A diferencia de la custodia máxima, en los casos de custodia mediana nada impide que el Comité se refiera a esta modificación discrecional para mantener a un confinado en referida custodia por un tiempo adicional. En su análisis, el Comité también

entendió que era necesario obtener una evaluación actualizada de la Sección de Programa de Evaluación y Asesoramiento (SPEA) y consideró otros aspectos, tales como, el poco tiempo que llevaba el recurrente en la custodia mediana. Esta decisión nos parece razonable.

Todo lo descrito anteriormente nos lleva a concluir que la determinación final de custodia está sustentada por el expediente administrativo, es compatible con la reglamentación aplicable, no es contraria a derecho, ni arbitraria o caprichosa. El Comité puede considerar ciertos criterios que, en conjunto, le permitan, de manera discrecional, modificar el grado de custodia que le será adjudicado al confinado.

En virtud de lo antes expresado, no encontramos razón que amerite descartar el criterio de deferencia que le debemos a la determinación recurrida y nos permita sustituir las conclusiones del Comité de Clasificación del Departamento de Corrección, por las nuestras. En consecuencia, procede confirmar la *Resolución* recurrida.

**IV.**

Por los fundamentos antes mencionados CONFIRMAMOS la resolución recurrida.

El Secretario del Departamento de Corrección y Rehabilitación debe entregar copia de esta determinación a la recurrente en la institución correccional donde se encuentra.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones